**GENERAL CINEMA CORPORATION, Plaintiff-Appellant,**

v.

**BUENA VISTA DISTRIBUTION CO., INC., Defendant-Appellee.**

No. 80–5851.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided July 12, 1982.

As Amended on Denial of Rehearing Aug. 18, 1982.

---

* The Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

James L. Seal, Swerdlow, Glikabrg & Shimer, P. C., Beverly Hills, Cal., for plaintiff-appellant.

A. Vernon Carnahan, Donovan, Leisure, Newton & Irvine, New York City, argued, for defendant-appellee; James A. Magee, Donovan, Leisure, Newton & Irvine, Los Angeles, Cal., on brief.

Before NELSON and REINHARDT, Circuit Judges, and EAST,* District Judge.

NELSON, Circuit Judge:

Appellant, General Cinema Corporation, complains that appellee Buena Vista Distribution Company's system for determining rental rates of films distributed by Buena Vista constitutes vertical price fixing. The district court found that General Cinema's complaint failed to present either "a competitive injury, a clear causal connection, [or] an antitrust violation," granted Buena Vista's motion for judgment on the pleadings, and later denied General Cinema leave to file an amended complaint. We agree that General Cinema has failed to allege an antitrust violation and, accordingly, affirm.

## FACTUAL BACKGROUND

General Cinema is an exhibitor of motion pictures to the public; Buena Vista distributes motion pictures to exhibitors like General Cinema, and is the exclusive distributor of films produced by Walt Disney Productions. Buena Vista earns its revenues by renting motion pictures to exhibitors under a license agreement.

General Cinema's complaint focuses on a system used by Buena Vista to determine

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

the amount of rent paid it. The contested system requires an exhibitor to pay either (i) a stated percentage (say, 70%) of each ticket sold, or (ii) the same percentage of a "minimum per capita amount" (minimum admission price) set in the license agreement, whichever is greater. Thus, if the "minimum per capita amount" were defined as $3.00, the rent would be a flat rate of $2.10 (per ticket sold) for tickets sold at less than $3.00, and 70% of the ticket price (per ticket sold) for tickets sold at greater than $3.00.[1]

## ISSUES

General Cinema raises three issues on appeal. It argues first that the district court erroneously held that it failed to allege a competitive injury and therefore lacked standing. Next, it claims the district court erroneously found that the first complaint failed to state a claim of vertical price fixing. Finally, General Cinema argues that any shortcomings in the first complaint were mended by the second complaint, and that the district court abused its discretion in denying leave to file the second complaint. We agree that General Cinema has standing to bring this claim because it has alleged that it has suffered competitive injury as a result of Buena Vista's vertical price fixing scheme. We affirm, however, because we conclude on the basis of the pleadings and the undisputed facts that, as a matter of law, Buena Vista's rental policy does not in fact constitute vertical price fixing.

### I. Standing

Private suits to enforce the prohibition of restraints of trade in Section 1 of the Sherman Act are authorized by Section 4 of the Act, 15 U.S.C. § 15 (1976), which provides that "[a]ny person ... injured ... by reason of anything forbidden in the antitrust laws may sue therefore ...." The Supreme Court has held that this language only grants standing to those who suffer "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701, 712 (1977). Thus a plaintiff must prove more than that its injury was causally linked to an act that violates the antitrust laws: it must prove "antitrust injury."

Retailers and wholesalers generally have standing to challenge schemes under which their resale prices are fixed by suppliers. *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). In *Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975), this court explained that wholesalers whose prices were fixed by a manufacturer suffered an antitrust injury because "[a] breakdown of the competitive process ... would endanger the [plaintiffs'] price making autonomy." *Id.* at 426–27.

Buena Vista argues that General Cinema, nevertheless, lacks standing because it has suffered no injury from the alleged price fixing scheme. Unlike the plaintiff in *Blankenship*, Buena Vista argues, General Cinema was free to set its own prices. General Cinema did not set its prices at the minimum per capita amount, and it did not, according to Buena Vista, suffer any penalty for failing to do so. But General Cinema points out that its failure to charge the minimum per capita amount resulted in its paying a higher percentage of its ticket revenues in rental fees than other exhibitors. General Cinema argues it was thus injured for failing to fix its prices.

This allegation of injury is sufficient to confer standing on General Cinema. General Cinema has alleged an injury, and it claims that that injury is an antitrust injury because imposition of the injury constitutes vertical price fixing. Buena Vista's objection that the alleged injury is too insubstantial to constitute an antitrust injury

---

1. The percentage rate varies with the number of weeks the picture is exhibited, and the minimum per capita amount varies with age group (child tickets versus adult tickets) and time of day (matinee versus evening show). These complications do not affect the antitrust analysis.

properly relates to the validity of General Cinema's price fixing claim, not General Cinema's standing to make the claim. We conclude that General Cinema has standing because it has alleged the type of injury that would constitute an antitrust injury if its complaint set forth facts sufficient to constitute a valid claim of vertical price fixing.

## II. Vertical Price Fixing

The parties have no dispute as to the basic facts of Buena Vista's rental policy; rather, the parties disagree as to the legal conclusion that should be drawn from those facts. The judgment on the pleadings entered below should be sustained only if it is clear as a matter of law that Buena Vista's rental policy does not constitute vertical price fixing. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 423 (9th Cir. 1975); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1368, at 689–91 (1969).

■ A supplier's attempt to fix the prices charged by those who resell its products— "vertical price fixing"—has been condemned as a violation of section 1 of the Sherman Act since the Supreme Court's 1911 decision in *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911). Vertical price fixing is still held to be *per se* illegal, *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 51 n.18, 97 S.Ct. 2549, 2558 n.18, 53 L.Ed.2d 568, 581 n.18 (1977), and the Supreme Court has given the following explanation of impermissible supplier behavior:

> [I]f a manufacturer is unwilling to rely on individual self-interest to bring about general voluntary acquiescence which has the collateral effect of eliminating price competition, and takes affirmative action to achieve uniform adherence by inducing each customer to adhere to avoid such price competition, the customers' acquiescence is not then a matter of individual free choice prompted alone by desirability of the product.

*United States v. Parke, Davis & Co.*, 362 U.S. 29, 46–47, 80 S.Ct. 503, 512–513, 4 L.Ed.2d 505, 517 (1960). Any claim of vertical price fixing must, therefore, demonstrate affirmative action that will induce customers to adhere to a uniform price rather than engage in price competition.

Suppliers engage in a variety of actions that might influence resale prices, but those actions are not unlawful unless they sufficiently induce avoidance of price competition. Thus, this circuit has upheld supplier activity intended to establish uniform prices because "the totality of [the supplier's] actions [did] not amount to the requisite quantum of coercion." *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 806 (9th Cir. 1976). *See also Butera v. Sun Oil Co.*, 496 F.2d 434, 437 (1st Cir. 1974); *Denison Mattress Factory v. Spring Air Co.*, 308 F.2d 403, 412 (5th Cir. 1962). In *Knutson* the defendant had sent letters to his customers "strongly recommend[ing]" that they sell at a suggested price and indicating that their business would benefit from selling at a uniform price. In *Denison Mattress Factory*, also, the manufacturer had suggested retail prices. And in *Butera* the supplier had simply changed his price in close conformity with his customers' price changes in order to insure that his customers' profit margins did not change.

■ Buena Vista's rental policy contains no elements of coercion that might encourage exhibitors to set any price other than a competitive price. General Cinema argues that it is coerced to raise prices above what it believes are competitive levels because, by charging low prices it must pay a higher percentage of its ticket price in rental fees than those who charge a higher price. But General Cinema fails to explain why the percentage of its ticket price that must be paid in film rental has any effect on where it sets the ticket price. We can see no way in which the different percentage of ticket price that must be paid in film rental could possibly influence exhibitors to set a noncompetitive ticket price. In fact, General Cinema seems to admit that the proportion of ticket price that goes to film rentals does not interfere with competitive pricing by admitting that Buena Vista could set its rental fee as a flat dollar amount per ticket regardless of ticket price. The effect of such a system would be identical to that of Buena Vista's challenged system: the rent-

al fee would be a high proportion of the ticket price for those who set low ticket prices, and the rental fee would be a low proportion of the ticket price for those who set high ticket prices. The differing proportion clearly has no illegal effect on exhibitors' pricing decisions under the flat dollar amount system, and General Cinema does not explain how the differing proportion resulting from Buena Vista's system is any different.[2]

General Cinema's dissatisfaction with Buena Vista's system is clear: General Cinema must pay more in film rental than it would if it paid the same percentage of its ticket price in rental fees as did exhibitors who set high prices. But General Cinema cannot invoke the antitrust laws to demand equal treatment unless it demonstrates that the unequal treatment induces exhibitors to set prices at other than a competitive level. Buena Vista's system does no more to induce exhibitors to set prices at other than a competitive level than a system that charges a flat dollar rental. Such an inducement is insufficient to constitute vertical price fixing. We therefore affirm the district court's award of judgment on the pleadings in favor of Buena Vista.

### III. Leave to Amend

General Cinema's amended complaint added no allegations sufficient to constitute a claim of vertical price fixing. At the hearing on its motion to vacate, and for leave to file an amended complaint, General Cinema characterized its amended complaint as alleging "price fixing, plus the implementation of policing to enforce the price fixing." Persistent questioning by the district court judge made it clear that General Cinema's only allegation of coercion sufficient to constitute price fixing was the

rental system: it did not claim a conspiracy or absolute refusal to deal.[3] Because the rental scheme does not involve coercion sufficient to constitute price fixing, Buena Vista's actions in furtherance of that scheme cannot constitute price fixing. The district court did not abuse its discretion in denying leave to amend.

The decision of the district court is

AFFIRMED.

---

2. General Cinema may be arguing that exhibitors are induced to raise prices—not because the percentage of ticket price that must be paid in film rental is lower at higher prices—but simply because in the higher price range ticket prices can be varied without a variation in the percentage of ticket price paid in rentals. We fail to see why any exhibitor would raise its prices simply to eliminate the variation in this percentage, especially because any advantage from eliminating the variation would only be

achieved at the expense of an increase in rental fees (i.e., from the set percentage of the minimum per capita amount to the set percentage of something greater than the minimum per capita amount).

3. The only refusal to deal claimed by General Cinema was a refusal to rent to General Cinema on terms other than those comprising the allegedly illegal rental system.