627 F.Supp. 233 (1985)
In re ARIZONA DAIRY PRODUCTS LITIGATION.
This Document Relates To:
STATE OF ARIZONA, Plaintiff,
v.
SHAMROCK FOODS COMPANY, an Arizona corporation; et al., Defendants.
Darryll J. WALTON, et al., Plaintiffs,
v.
SHAMROCK FOODS COMPANY, an Arizona corporation; et al., Defendants.
Nos. CIV 74-569A PHX-CAM, CIV 74-594 PHX CAM and CIV 74-736 PHX CAM.
United States District Court, D. Arizona.
December 3, 1985.
*234 David L. White and Don G. Kessler, Jennings Strouss & Salmon, Phoenix, Ariz., for defendants.
Timothy J. Burke, Fennemore Craig Vonammon & Udall, Phoenix, Ariz., for Beatrice Food Co.
Steven D. Copple, Black Robertshaw Copple & Pozgay, Phoenix, Ariz., for Food Giant Super Markets, Inc.
J. Michael Hennigan, Greenberg Hennigan & Mercer, Beverly Hills, Cal., for plaintiffs.
MUECKE, District Judge.
Having received and considered Defendant Shamrock Foods Company's Motion to Dismiss, filed September 24, 1985; Defendant Beatrice Companies' Joinder in Defendants' Motion to Dismiss, filed October 9, 1985; Defendant A.J. Bayless Markets, Inc.'s Joinder in Defendants' Motion to Dismiss and Joinder in Defendant Beatrice Companies' Joinder in Defendants' Motion to Dismiss, filed October 22, 1985; Plaintiffs' Opposition to Defendants' Motion to Dismiss, filed November 8, 1985; Reply Memorandum of Beatrice Companies In Support of Motion to Dismiss Claims for Purchases from Non-Defendant Retailers, filed November 15, 1985; Shamrock Defendants' Memorandum in Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss, filed November 15, 1985; and having heard oral argument by counsel, this Court finds and concludes as follows:
By these motions, defendants seek to dismiss the portion of the plaintiffs' complaints seeking damages sought in connection with direct purchases from other than alleged participants in a retail-level conspiracy who are presently named defendants. In their complaints, plaintiffs allege:
Various corporations, firms and individuals both named and not named as defendants in this complaint participated as co-conspirators in the violations alleged and performed acts and made statements in furtherance thereof.
¶ 10 of Consumer Class Fourth Amended Complaint, filed April 8, 1985; ¶ 10 of State of Arizona Fifth Amended Complaint, filed April 8, 1985.
Plaintiffs have alleged a conspiracy between "virtually every [milk] retailer in the *235 state" of Arizona, as well as various wholesale vendors, to fix the retail prices of milk. This conspiracy is alleged to have occurred on a retail level only, although plaintiffs had previously alleged a wholesale level conspiracy. Although the allegations in the complaints include claims against many participants in the alleged conspiracy, plaintiffs have named only a portion of them as defendants.
In essence, defendants request that this Court dismiss all damage claims against them based upon sales made by non-conspirator competitors and un-named conspirators. They argue that such claims are speculative and amount to an "umbrella" theory of relief, which has been previously rejected by other courts. They rely upon several authorities for their contentions, including Mid-West Paper Products Co. v. Continental Group, 596 F.2d 573 (3rd Cir. 1979) ("Mid-West"); In re Coordinated Pretrial Proceedings In Petroleum Products Antitrust Litigation, 691 F.2d 1335 (9th Cir.1982) ("Petroleum"), and Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).
First, in regard to the claims related to sales made by non-conspirators (i.e. retail competitors who were not participants in the alleged conspiracy), defendants argue that Mid-West and Petroleum bar these allegations of an "umbrella" theory of relief. They argue that the "umbrella" concept presented here is much like the claim in Petroleum, supra, 691 F.2d, at 1338-39:
Plaintiffs contend that defendants' successful price-fixing conspiracy created a "price umbrella" under which non-conspiring competitors of the defendants raised their gasoline prices to an artificial level at or near the fixed price. Since defendants are allegedly responsible for creating a market situation where conduct of this nature is possible, plaintiffs argue that defendants should be held responsible for damages resulting from their competitors' higher prices.
The conspiracy at issue has been alleged to have involved price-fixing on a retail level only. On a previous appeal in this matter, the Ninth Circuit noted the following:
Whether allegations of a retail price-fixing conspiracy such as the one alleged by the consumers would avoid the bar of Illinois Brick was expressly reserved by this circuit in In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 691 F.2d 1335, 1341 n. 9 (9th Cir.1982).
Arizona v. Shamrock Foods Company, 729 F.2d 1208, 1212 (9th Cir.1984). This Court has not been directed to a recent decision by the Ninth Circuit addressing this issue. While there is no controlling authority in this circuit, defendants rely upon the reasoning of Mid-West, claiming it to be dispositive of the claims presented. There, the Third Circuit was faced with a contention similar to that considered herein:
Murray [plaintiff] advances the theory that it may sue for treble damages because of injuries it suffered as a direct purchaser of consumer bags from competitors of the defendants, who allegedly were able to charge artificially inflated prices as a consequence of defendants' price-fixing.
Id., 596 F.2d, at 580. The Court went on to point out:
The question whether Murray's injury should be legally attributable to the defendants depends in some measure on whether and how accurately Murray's alleged injury is economically traceable to the defendants. That issue in turn parallels the pass-on issue raised in Illinois Brick because in both situations the plaintiff seeks to recover for higher prices set by, and paid by it to, parties other than the defendants. And the rationale underlying Illinois Brickthat it would be almost impossible, and at the very least unwieldy, to attempt to trace the incidence of the anticompetitive effect of defendants' conductbears even greater truth in the context of a purchaser from a competitor of the defendants.
Id., at 584.
The Court found that the purchaser had no standing to sue the defendants under § 4 *236 of the Clayton Act, 15 U.S.C.A. § 15, for damages arising sales by the competitors.
A district court in this circuit has found to the contrary. In State of Washington v. American Pipe and Construction Co., 280 F.Supp. 802 (W.D.Wash.1968), the court was presented with the following situation:
Plaintiffs are also seeking compensation from American for allegedly excessive payments made on purchases from non-conspiratorial manufacturers. Plaintiffs assert that the alleged conspiracy raised the general price level in the market, and that non-conspirators sold their product under this umbrella at higher prices than would have prevailed absent the illegal activity. American contends such claims are too remote and unrelated to the alleged violation to support a cause of action under § 4 of the Clayton Act.
Id., at 805. Upon finding that a fact question existed as to the cause of plaintiffs' injury, the court stated:
If plaintiffs can establish as a matter of fact (1) that they paid more for pipe purchased from non-defendant non-conspirators than would have been paid absent the alleged conspiracy, and (2) that American's alleged participation in an anticompetitive conspiracy was the cause of such over-payment, nothing in the law will preclude recovery from American. Plaintiffs' ability to prove such facts is for the jury to decide, not this court.
Id., at 807.
At the hearing on this matter, this Court mentioned a theory quite similar to that stated above which allows recovery, although it did not make specific reference to the State of Washington decision. A review of the reasoning in that case lends further support for the view espoused by this Court at the November 22, 1985 hearing. As such, this Court will follow this line of reasoning in State of Washington, supra, and as discussed at the hearing and will allow the claims against non-conspirator non-defendants, provided plaintiffs can meet the standards set forth in State of Washington. See also Dolphin Tours Inc. v. Pacifico Creative Service, 773 F.2d 1506 (9th Cir.1985) (dealing with causation under § 4 claims). Such claims may be properly made in accordance with Rule 15, Federal Rules of Civil Procedure. Upon such a showing, the jury could then determine whether the plaintiffs have been injured by the defendants' alleged anticompetitive activity and the amount of injury incurred.
Should the plaintiffs fail to meet the causation requirements as to these parties, defendants may then move to dismiss the claims at that time. As such, this Court will deny the motions to dismiss in regard to the non-conspirator non-defendants without prejudice.
Second, defendants seek to dismiss any un-named conspirators who are alleged to have participated in the fixing of retail milk prices. They cite to this Court's Order of July 26, 1982, where the parties were to add the grocery stores as defendants to this action. They argue that the Order precludes any subsequent claims of co-conspirators. Defendants also contend that these claims are barred under Mid-West, supra, and Petroleum, supra. In regard to the preclusive effect of this Court's previous Orders, several points should be noted. First, plaintiffs are not seeking damages from the un-named conspirators but rather from the named-defendants based upon sales by the un-named conspirators. It is undisputed that any participants involved in the alleged conspiracy are jointly and severally liable with no right to contribution. See Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). Accordingly, the failure to include a portion of the conspirators does not preclude recovery of all the damages incurred from the named defendants.
Notwithstanding the above, the plaintiffs retain the burden of proving that a conspiracy existed between the named-defendants and the un-named co-conspirators. Although this burden may be met by inference, *237 see Esco Corporation v. United States, 340 F.2d 1000, 1007 (9th Cir.1965) (citing Daily v. United States, 282 F.2d 818 (9th Cir.1960), the United States Supreme Court has stated:
Although following industry leaders may help support an inference of agreement, "this Court has never held that proof of parallel business behavior [by itself] conclusively establishes agreement or, phrased differently, that such behavior itself constitutes a Sherman Act offense." Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 541, 74 S.Ct. 257, 259, 98 L.Ed. 273 (1954).
Texas Industries, Inc. v. Radcliff Materials, Inc., supra, 101 S.Ct., at 2065 n. 9.
Further, should plaintiffs prove unable to prove the existence of a conspiracy which included un-named parties, the claims may then be presented as claims regarding non-conspirator competitors discussed above.
In regard to defendants' contention that Mid-West and Petroleum apply to claims against co-conspirators, a review of those decisions reveals the contrary. The Courts in Mid-West and Petroleum were faced by a different inquiry: Whether damages could be collected from the defendants based upon sales by non-conspiring competitors. As mentioned above, plaintiffs have alleged that "virtually every retailer in the state was involved at one time or another." Although plaintiffs are unable to provide authority for the proposition that claims for sales made by un-named co-conspirators are not precluded, defendants' citation to Mid-West and Petroleum does not dispose of the issue presented to this Court.
Finally, in reviewing these motions to dismiss, this court must construe the complaint in favor of the pleader, Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426 (9th Cir.1978); Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977), and resolve doubts in favor of the pleader. Williams v. Gorton, 529 F.2d 668, 672 (9th Cir.1976).
If plaintiff is able to prove that unnamed participants engaged in a conspiracy with the named defendants to set retail prices of milk, it would appear that plaintiffs are entitled to recover damages from the defendants in regard to sales by those un-named conspirators. Nevertheless, it should be noted that neither party has presented authority on the issue of the requisite proof necessary to obtain relief under such a claim.
Accordingly, based upon the above, as well as all the reasons set forth by the plaintiffs, the motions will be denied.
Based upon the foregoing,
IT IS ORDERED that Defendant Shamrock Foods Companys' Motion to Dismiss, filed September 24, 1985; Defendant Beatrice Companies' Joinder in Defendants' Motion to Dismiss, filed October 9, 1985, and Defendant A.J. Bayless Markets, Inc.'s Joinder in Defendant Beatrice Companies' Joinder in Defendants' Motion to Dismiss, filed October 22, 1985, are denied.