730 F.2d 528
 1984-1 Trade Cases 65,909
 In re MIDWEST MILK MONOPOLIZATION LITIGATION.
STATE OF ILLINOIS, Appellant,
v.
ASSOCIATED MILK PRODUCERS, INC., Associated Milk Dealers,
Inc., Associated Reserve Standby Pool Cooperative,
Central Milk Producers Cooperative and
Central Milk Sales Agency, Appellees.
In re MIDWEST MILK MONOPOLIZATION LITIGATION.
SENTRY FOOD STORES, INC., Appellant,
v.
ASSOCIATED MILK PRODUCERS, INC., Associated Milk Dealers,
Inc., Associated Reserve Standby Pool Cooperative,
Central Milk Producers Cooperative and
Central Milk Sales Agency, Appellees.
 Nos. 82-2162, 82-2163.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1983.
Decided March 20, 1984.
Rehearing Denied May 18, 1984.
 
 Joel M. Hellman, Chicago, Ill., for Sentry Food Stores, Inc., appellant; Pressman & Hartunian, Chtd., Chicago, Ill., of counsel.
 Tyrone C. Fahner, Atty. Gen., State of Ill., Chicago, Ill., for State of Ill.; Thomas M. Genovese, Chief, Thomas S. Malciauskas, Ardath A. Hamann, Asst. Attys. Gen., Antitrust Div., Chicago, Ill., of counsel.
 Sydney Berde, Richard M. Hagstrom, Berde & Hagstrom, P.A., St. Paul, Minn., for appellees Associated Milk Producers, Inc., Cent. Milk Producers Co-op. and Cent. Milk Sales Agency.
 Richard K. Decker, Michael P. Comiskey, Chicago, Ill., for Associated Milk Dealers, Inc., appellee; Lord, Bissell & Brook, Chicago, Ill., of counsel.
 William A. Carey, John F. Sherlock, III, Barnett & Alagia, Washington, D.C., for Associated Reserve Standby Pool Co-op., Inc.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BROWN, Senior Circuit Judge.*
 LAY, Chief Judge.
 
 
 1
 This is an appeal from a grant of summary judgment in favor of Associated Milk Producers, Inc. (AMPI); Associated Reserve Standby Pool Cooperative (ARSPC); Associated Milk Dealers, Inc. (AMDI); Central Milk Producers Cooperative (CMPC); and Central Milk Sales Agency (CMSA) (hereinafter cooperatives).[1] Jurisdiction is invoked pursuant to 28 U.S.C. Sec. 1291.
 
 Background
 
 2
 On March 15, 1972, the State of Illinois filed a complaint alleging that the aforementioned cooperatives were involved in a conspiracy to fix the price, fix the handling charges, and control the supply of raw milk in the Chicago marketing area. During the pendency of the case, Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), was decided. In Illinois Brick, the Supreme Court held that a remote or "indirect" purchaser was not a person injured in his or her business or property within the meaning of Section 4 of the Clayton Act. Id. at 735, 97 S.Ct. at 2069. On January 13, 1982, the district court granted the cooperatives' motion for summary judgment finding that plaintiffs' claims for damages were barred as a matter of law under Illinois Brick. In re Midwest Milk Monopolization Litigation, 529 F.Supp. 1326 (W.D.Mo.1982). The district court denied the State of Illinois's motion for leave to file another amended complaint and this appeal followed. On appeal, the State of Illinois and Sentry Foods assert: (1) genuine issues of material fact were improperly disregarded by the district court; (2) the district court misapplied the rule in Illinois Brick; and (3) the district court should have compelled joinder of a coconspirator middle-agent or supplier. We affirm the holding of the district court.
 
 Joinder
 
 3
 Although the district court found that plaintiffs had pled only a horizontal conspiracy and the district court would not, as we later discuss, allow amendment of the complaint and joinder of absent coconspirators, for purposes of our discussion we assume that plaintiffs desired to allege, or actually did allege, a vertical conspiracy as well as a horizontal conspiracy. Sentry, on appeal, alleges that "the resulting illegal overcharges were directly and completely passed on to plaintiff through conspiring dealers who were identified in the record as plaintiff's suppliers and also as certain of the unnamed co-conspirators referenced in the Complaint." Plaintiffs assert that because the suppliers are alleged to be coconspirators, the general rule of Illinois Brick barring proof of "passing on" can be avoided. Plaintiffs urge that because of the collusion and market power of the milk producers and dealers, ordinary market forces were superceded at the level of the dealers and all supra-competitive charges for raw milk were passed on to the plaintiffs. It is urged that the cooperatives are therefore not subject to multiple liability since plaintiffs' suppliers were co-equal conspirators. Consequently, it is argued that the plaintiffs will not be able to recover against these cooperatives.
 
 
 4
 We need not decide the issue as plaintiffs present it. Plaintiffs' argument must fail because the alleged coconspirators, that is, the dealers, are not joined as parties. The State of Illinois and Sentry Foods concede that they did not buy raw milk, fluid milk products, or other processed milk products from any of the cooperatives.[2] In re Midwest Milk Monopolization Litigation, 529 F.Supp. at 1330. The State of Illinois purchased its milk products on the basis of bids from unnamed dealers or vendors; Sentry purchased its milk products through a master vendor (McMahon), who purchased through Dean Foods Company, and these purchases were billed to Sentry by Centrella (a buying cooperative of which Sentry is a member). On this basis, the district court found that the State and Sentry are "indirect purchasers" and are barred under Illinois Brick.
 
 
 5
 Illinois Brick was expressly concerned with (1) duplicitous liability and (2) the complexities and uncertainties of proof inherent in an action based on a passing-on theory.[3] Consequently, the district court reasoned that actions can be brought only by direct purchasers. As we originally noted, both the State and Sentry argue that standing should be recognized because the dealer-processors, although not joined as party defendants, are unnamed coconspirators. See Jewish Hospital Association v. Stewart Mechanical Enterprises, Inc., 628 F.2d 971 (6th Cir.1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981); Fontana Aviation Inc. v. Cessna Aircraft Co., 617 F.2d 478 (7th Cir.1980); In re Beef Industry Antitrust Litigation, 600 F.2d 1148, 1163 (5th Cir.1979); In re Mid-Atlantic Toyota Antitrust Litigation, 516 F.Supp. 1287 (D.Md.1981); Chatham Brass Co. v. Honeywell, Inc., 512 F.Supp. 108, 116 (S.D.N.Y.1981); Reiter v. Sonotone Corp., 486 F.Supp. 115 (D.Minn.1980); Technical Learning Collective, Inc. v. Daimler-Benz Atkiegesellschaft, Trade Cases (CCH) p 63,612 (D.Md.1980-81); Dart Drug Co. v. Corning Glass Works, 480 F.Supp. 1091 (D.Md.1979); Florida Power Corp. v. Granlund, 78 F.R.D. 441 (M.D.Fla.1978); see also Cavanaugh, Illinois Brick Revisited: An Analysis of a Developing Antitrust Jurisprudence, 17 Val.U.L.Rev. 64 (1983). Plaintiffs urge that they are not required to join all the conspirators to the conspiracy.
 
 
 6
 In In re Beef Industry Antitrust Litigation, 600 F.2d 1148 (5th Cir.1979), cert. denied, 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980), the court stated:
 
 
 7
 Whatever the merits of the arguments for such an exception in general, we do not think that the reasoning of Illinois Brick permits recognizing the exception when, as here, the alleged co-conspirator middlemen are not named as parties defendant. Absent joinder of the packers and slaughterhouses, the rule forbidding one antitrust conspirator from maintaining an action against another for damages arising from the joint activity would not protect these defendants from the risk of overlapping liability. The retail chains could not, in a suit brought by the packers, use a judgment or finding of vertical conspiracy in the instant case to prevent the packers from successfully asserting in their own lawsuit that they did not in fact conspire with the chains and are therefore not barred by the co-conspirator doctrine from recovering damages from the retail chains. E.g., Mosher Steel Corp. v. N.L.R.B., 5 Cir.1978, 568 F.2d 436. Because the packers are not parties to this suit, the possibility of inconsistent adjudications on the issue of the existence of a vertical conspiracy leaves the defendants subject to the risk of multiple liability that the Illinois Brick Court found unacceptable.
 
 
 8
 Id. at 1163 (emphasis added). See also In re Coordinated Pretrial Proceedings, 497 F.Supp. 218, 228 (C.D.Cal.1980), aff'd, 691 F.2d 1335, 1341-2 (9th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 972, 79 L.Ed.2d 211 (1984); In re Mid-Atlantic Toyota Antitrust Litigation, 516 F.Supp. 1287, 1296 (D.Md.1981); Dart Drug Corp. v. Corning Glass Works, 480 F.Supp. 1091, 1103-04 (D.Md.1979).
 
 
 9
 The same reasoning set forth in In re Beef was applied in In re Coordinated Pretrial Proceedings, 691 F.2d 1335 (9th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 972, 79 L.Ed.2d 211 (1984).[4] As stated in Pretrial Proceedings:
 
 
 10
 Absent joinder of retail dealers, serious risks of duplicative recovery and inconsistent adjudications would ensue. In re Beef Industry Antitrust Litigation, supra, 600 F.2d at 1148. If plaintiffs recovered damages for a vertical conspiracy between defendants and non-party retail dealers, any of those dealers could prove in a subsequent action that they were not conspirators and, as direct purchasers, were entitled to damages arising out of the same events. In Illinois Brick, the Court expressly found unacceptable the risk of duplicative recovery created by allowing direct and indirect purchasers to claim damages resulting from a single transaction that violated the antitrust laws. 431 U.S. at 730-31, 97 S.Ct. at 2066-67. [Blue Shield of Va. v.] McCready, U.S. at , 102 S.Ct. [2540] at 2546 [73 L.Ed.2d 149].
 
 
 11
 Id. at 1342. We note, however, that conflict exists in the Ninth Circuit. In 1981, the year prior to the decision in Pretrial Proceedings, a separate Ninth Circuit panel decided the case of William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc., 668 F.2d 1014 (9th Cir.1981), cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). That court stated:
 
 
 12
 The issue presented is an unusual one. It is undisputed that Inglis' complaint alleged a conspiracy in violation of the Sherman Act. It appears, however, that throughout much of the lengthy pretrial proceedings in this case, the parties assumed that the only conspiracy at issue was the horizontal one between the named defendants. Nevertheless, Inglis' complaint did raise the possibility of a conspiracy between one or more of the named defendants and unnamed third parties. Inglis, however, was not required to sue all of the alleged conspirators inasmuch as antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy.... Nor was Inglis required to name all of the coconspirators in its complaint.
 
 
 13
 Id. at 1052-53 (citations omitted) (emphasis added).[5] The Inglis court did not discuss the issue in terms of Illinois Brick and, consequently, we do not find its reasoning to be persuasive. See also Wilson P. Abraham Construction Corp. v. Texas Industries, Inc., 604 F.2d 897 (5th Cir.1979), aff'd, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).
 
 
 14
 In the present case, Sentry and the State also argue that because the statute of limitations has run on the claims of the coconspirators, no risk of duplicitous liability exists. Without addressing the tolling issues, we choose not to endorse this ad hoc approach. See In re Coordinated Pretrial Proceedings, 691 F.2d 1335 (9th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 972, 79 L.Ed.2d 211 (1984). The Supreme Court recently reaffirmed its position that the risk of duplicitous liability must be avoided. In Associated General Contractors of California, Inc. v. California State Council, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) the Court reiterated:
 
 
 15
 The indirectness of the alleged injury also implicates the strong interest, identified in our prior cases, in keeping the scope of complex antitrust trials within judicially manageable limits. These cases have stressed the importance of avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other. Thus, in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), we refused to allow the defendants to discount the plaintiffs' damages claim to the extent that overcharges had been passed on to the plaintiffs' customers. We noted that any attempt to ascertain damages with such precision "would often require additional long and complicated proceedings involving massive evidence and complicated theories." Id., at 493, 88 S.Ct., at 2231. In Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), we held that treble damages could not be recovered by indirect purchasers of concrete blocks who had paid an enhanced price because their suppliers had been victimized by a price-fixing conspiracy. We observed that potential plaintiffs at each level in the distribution chain would be in a position to assert conflicting claims to a common fund, the amount of the alleged overcharge, thereby creating the danger of multiple liability for the fund and prejudice to absent plaintiffs.
 
 
 16
 Id. at 911-12 (footnote omitted). In the present case, the risk of multiple liability clearly exists. The district court found that Oberweis Dairy and Certified Grocers have filed suit against these same cooperatives. See In re Midwest Milk Monopolization Litigation, 529 F.Supp. at 1340. We conclude that, assuming plaintiffs' argument to be a valid exception to Illinois Brick, joinder of the retail dealers (the unnamed coconspirators) is required to prevent a substantial risk of duplicitous liability. We further find that the trial court did not abuse its discretion in rejecting an amended complaint and the proposed joinder of absent parties.
 
 
 17
 The plaintiffs alternatively argues that the district court should have compelled joinder if it was necessary to continue the proceedings. The test as to whether one is an indispensable party under Fed.R.Civ.P. 19 is (1) whether the party's presence is necessary to grant complete relief; (2) whether the absence of the party would risk double, multiple, or inconsistent obligations; and (3) whether the missing party had any substantial interest in the case. Jetro Cash and Carry Enterprises, Inc. v. Food Distribution Center, 569 F.Supp. 1404 (E.D.Pa.1983); In re Mid-Atlantic Toyota Antitrust Litigation, 516 F.Supp. 1287 (D.Md.1981). See generally 3A J. Moore & J. Lucas, Moore's Federal Practice p 19.07 (2nd ed. 1982); 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1604 (1972). In the instant case, the plaintiffs made an informal offer to the trial court to join the coconspirators if the court deemed it necessary; however, we think once Illinois Brick was decided plaintiffs had a greater burden to specifically move for joinder.
 
 
 18
 Finally the State urges that the district court's denial of their motions to amend the pleadings is an abuse of discretion. We disagree. Undue delay in filing a motion to amend is a rational basis for denying the motion. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 19
 The State contends that its amended complaint sought only to clarify the issues, not to "inject new issues or claims."[6] In re Midwest Milk Monopolization Litigation, 529 F.Supp. at 1342. However, more importantly, plaintiffs did not move to amend these complaints until several years after the Illinois Brick case had been decided. The court in In re Beef found a five month time lapse between Illinois Brick and the filing for a motion to amend the complaint to be unjustified. In re Beef, 600 F.2d at 1162. We find that under Foman the district court did not abuse its discretion in refusing to allow the pleadings to be amended.
 
 
 20
 The claims of Sentry and the State present a classic Illinois Brick situation.[7] Under Illinois Brick, the plaintiffs could only be saved if they came within the cost-plus exception or, possibly, a functional equivalent exception to the pass-on problem. However, it is agreed that neither Sentry nor the State had a preexisting, fixed quantity cost-plus contract.[8] The district court rejected the functional equivalent argument and Sentry only indirectly raises the question on appeal. Assuming the argument was presented to this court, which we question, we must reject it for the same reasons set forth by the district court. See 529 F. Supp. at 1337-39.[9]
 
 Conclusion
 
 21
 Under our view that non-joinder defeats plaintiffs' claims, it is not necessary to review the arguments made relating to allegedly disputed facts and the appropriateness of the grant of summary judgment.
 
 
 22
 In conclusion, we find the district court did not err in granting summary judgment in favor of the cooperatives.
 
 
 23
 Judgment affirmed.
 
 
 
 *
 The Honorable Bailey Brown, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 The district court, the Honorable John W. Oliver, Senior District Judge, United States District Court for the Western District of Missouri, presiding, identified these parties in In re Midwest Milk Monopolization Litigation, 529 F.Supp. 1326, 1329-30 (W.D.Mo.1982)
 
 
 [2]
 Although we are not required at this juncture to determine whether raw milk and fluid milk are equivalent for purposes of this case, we agree with the court in In re Sugar Industry Antitrust Litigation, 579 F.2d 13 (3rd Cir.1978), when it stated that a change in the makeup of a product by incorporating an additional element cannot be used "to escape the reach of a treble-damage penalty." Id. at 18
 
 
 [3]
 See also Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968)
 
 
 [4]
 For a review of In re Beef, see Cotter, Antitrust Law-In re Beef Antitrust Litigation: A Crack Appears in the Illinois Brick Wall, Jan.-Feb. Wis.L.Rev. 185-206 (1981)
 
 
 [5]
 Other courts have acknowledged that all coconspirators in a vertical conspiracy need not be joined if the risk of multiple liability is slight. In Royal Printing Co. v. Kimberly-Clark Corp., 621 F.2d 323, 326 (9th Cir.1980), the court allowed an indirect purchaser to proceed with the action without joining the middle-agents. The court stated:
 We recognize that there is, in fact, some small chance that such a subsidiary or division might wish to sue its parent's co-conspirators. The parent might be under government pressure or discover that the conspiracy is not sufficiently profitable; and if a subsidiary has outside shareholders, a derivative suit might be a possibility. In such an event, multiple liability might lurk.
 But because as a practical matter the chance of a direct-purchaser suit is so small, the correspondingly small risk of multiple recovery does not disturb us. This is especially so when our only alternative is to effectively immunize the transactions here from private antitrust liability, thus thwarting a vital part of the antitrust enforcement scheme and the expressed purpose of Illinois Brick. [Footnotes omitted]
 See also In re Mid-Atlantic Toyota Antitrust Litigation, 516 F.Supp. 1287, 1294 (D.Md.1981) (mere possibility of duplicitous recovery does not require dismissal under Illinois Brick ).
 
 
 [6]
 The district court, however, read the new complaint differently. The court felt the State was trying to alter its theory of recovery by alleging a vertical conspiracy and alleging new facts. In re Midwest Milk Monopolization Litigation, 529 F.Supp. at 1342. As we noted previously, even if the complaint is construed to permit such a claim, failure to join the coconspirators moots the issue
 
 
 [7]
 For a thoughtful analysis of this issue, see Schaefer, Passing-On Theory in Antitrust Treble Damage Actions: An Economic and Legal Analysis, 16 Wm. & Mary L.Rev. 883 (1975); see also Note, Scaling the Illinois Brick Wall: The Future of Indirect Purchasers in Antitrust Litigation, 63 Cornell L.Rev. 309, 315 (1978)
 
 
 [8]
 See In re Midwest Milk Monopolization Litigation, 529 F.Supp. at 1330 (p 22) & 1335 (p 26)
 
 
 [9]
 See In re Beef (argument permitted) and Zinser v. Continental Grain Co., 660 F.2d 754, 761 (10th Cir.1981), cert. denied, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982) (court disagrees with use of "functional equivalent" argument); Midwest Paper Products Co. v. Continental Group, Inc., 596 F.2d 573, 578 (3rd Cir.1979) (argument disallowed); see also Comment, A Legal and Economic Analysis of the Cost Plus Contract Exception in Hanover Shoe and Illinois Brick, 47 U.Chi.L.Rev. 743 (1980)