## In re BRAND NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION.

### No. 94 C 897.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 20, 1997.

Paul Ethan Slater, Greg Shinall, Sperling, Slater & Spitz, P.C., Chicago, IL, Jeff Robert Branick, Provost & Umphrey, Richard Lyle Coffman, Attorney at Law, Beaumont, TX, Junie Leroy Bradshaw, Wyatt B. Durrette, Jr., Durrette, Irvin, Lemons & Bradshaw, P.C., Van C. Ernest, Durrette Irvin & Bradshaw, Richmond, VA, for Brand Name Prescription Drugs Antitrust Litigation.

James M. McGraw, Looper, Reed, Mark & McGraw, Inc., Houston, TX, for Randalls Food & Drug.

Steven Joseph Rotunno, Kubasiak, Cremieux, Fylstra, Reizen & Rotunno, P.C., Chicago, IL, David A. Melnick, Stephanie L. Melnick, Melnick & Melnick, S.C., Milwaukee, WI, for Don's Phar Inc.

Judi A. Lamble, Fay Clayton, Robinson, Curley & Clayton, P.C., Chicago, IL, for Conneys Phar Inc.

Wendi Sloane Weitman, Richard Allen Saldinger, Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg, Chicago, IL, Thomas P. O'Brien, III, Charles G. Middleton, III, James N. Williams, Nancy J. Schook, Middleton & Reutlinger, Louisville, KY, Taylor Drug Stores, Inc.

Jeffrey A. Leon, Winston & Strawn, Frank Cicero, Jr., James Andrew Langan, Anne J. McClain, Nader R. Boulos, Kirkland & Ellis, Chicago, IL, Jeffrey S. Cashdan, King & Spalding, Atlanta, GA, for Abbott Labs.

John W. Treece, David M. Schiffman, Marjorie Golis Wilde, Sidley & Austin, Chicago, IL, for GD Searle & Company.

Steven Joseph Rotunno, Kubasiak, Cremieux, Fylstra, Reizen & Rotunno, P.C., Kael Behan Kennedy, James L. Komie, Schuyler, Roche & Zwirner, Chicago, IL, Marguerite S. Boyd, John W. Nields, Jr., Howrey & Simon, Patricia A. Gaegler, George R. Kucik, Nada S. Sulaiman, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, David A.

Melnick, Stephanie L. Melnick, Melnick & Melnick, S.C., Milwaukee, WI, for Bindley Western Industries, Inc.

Jerome H. Torshen, Torshen, Spreyer & Garmisa, Ltd., Lee A. Freeman, Freeman, Freeman & Salzman, P.C., Chicago, IL, Gregory D. Hanley, Honigman, Miller, Schwartz & Cohn, Detroit, MI, David E. Everson, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Richard Alan Arnold, Scott E Perwin, James J. Kenny, William J. Blechman, Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, P.A., Miami, FL, Richard W. Giauque, Stephen T. Hard, Douglas H. Patton, Giauque, Crockett, Bendinger & Peterson, Salt Lake City, UT, Peter J. Venaglia, Jeffrey M. Strank, Dombush, Mensch, Mandelstam & Schaeffer, New York City, for Marion Merrell Dow Inc.

Ruth F. Masters, Latham & Watkins, David Stewart Fleming, Ralph Joseph Gabric, Brinks, Hofer, Gilson & Lione, Lee A. Freeman, Jr., John F. Kinney, James T. Malysiak, Freeman, Freeman & Salzman, P.C., Richard William Austin, Richard S. Wisner, Audrey A. Berish, Pretzel & Stouffer, Chtd., Nancy Schaefer, Schaefer, Rosenwein & Fleming, Daniel S. Hefter, Martin B. Carroll, Hefter & Radke, George L. Saunders, Jr., Saunders & Monroe, Heather A. Libbey, Wilson & McIlvaine, Matthew Sean Elvin, Hefter & Drake, James L. Schwartz, Schwartz & Spalding, John Kenneth Kallman, Law Offices of John Kenneth Kallman, Robert E. Davy, Robert E. Davy, Jr. & Associates, Henry F. Field, Attorney at Law, Thomas D. Rosenwein, Rosenwein & Oberholtzer, Chicago, IL, Mark G. Arnold, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, MO, William F. Cavanaugh, Jr., Patterson, Belknap, Webb & Tyler, Thomas F. Cumin, Laura Mezey, Cahill, Gordon & Reindel, Richard J. Holwell, White & Case, Robert A Milne, Dewey Ballantine, Ronald W. Davis, Attorney, New York City, Donald L. Flexner, Crowell & Moring, Jennifer A. Albert, Arent, Fox, Kintner, Plotkin & Kahn, Herbert Dym, David L. Meyer, Jonathan R. Galst, Covington & Burling, Washington, DC, Arthur Makadon, Mark S. Stewart, Leslie E. John, Daniel Schoor–Rube, Stephen J. Kastenberg, Ballard, Spahr, Andrews & Inger-

soll, Philadelphia, PA, Frederick P. Furth, Furth, Fahrner & Mason, Joseph L. Alioto, Joseph L. Alioto Law Offices, San Francisco, CA, Barbara Reeves, Morrison & Foerster, Los Angeles, CA, John Alexander Cochrane, Cochrane & Bresnahan, Charles Harley Johnson, Johnson Law Office, Joseph Andrew Kowalcik, Kowalcik Law Office, St. Paul, MN, Lawrence B. Clark, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for Burroughs Wellcome Company.

Alan J. Weinschel, Bruce A. Colbath, Weil, Gotshal & Manges, New York City, Steven P. Mandell, Davidson, Goldstein, Mandell & Menkes, Craig Allen Varga, Varga, Berger, Ledsky & Hayes, Chicago, IL, for Foxmeyer Drug Company.

William J. Gibbons, Latham & Watkins, Chicago, IL, J. Thomas Rosch, McCutchen, Doyle, Brown & Enersen, Trevor J. Chaplick, Latham & Watkins, San Francisco, CA, for McKesson Corporation.

Jerome I. Chapman, Kenneth A. Letzler, Deena R. Bernstein, Jill T. Feeney, Arnold & Porter, Washington, DC, Kenneth M. Sullivan, Haligman and Lottner, P.C., Denver, CO, for Glaxo, Inc.

Nathan P. Elmer, Sidley & Austin, Chicago, IL, Mary B. Cranston, Jeffrey S. Ross, Terrence A. Callan, Attorney at Law, Gary H. Anderson, Melanie A. Shark, Patrick S. Thompson, Pillsbury, Madison & Sutro, San Francisco, CA, for Rhone–Poulenc Rorer, Inc.

Thomas F. Gardner, Deborah Platt Herman, Jones, Day, Reavis & Pogue, Alan H. Silberman, Sanford Mark Pastroff, Evan G.S. Siegel, Sonnenschein, Nath & Rosenthal, Chicago, IL, David Klingsberg, Michael Malina, David Copeland, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Pfizer Incorporated.

Daniel Richard Formeller, Andrea Ellen Kayne, Tressler, Soderstrom, Maloney & Priess, Joel Gerald Chefitz, Donald E. Egan, Stephen David Libowsky, Katten, Muchin & Zavis, Chicago, IL, Kenneth R. Logan, Richard C. Weisberg, Joseph F. Tringali, Kathryn A. Clokey, Peter G. Koclanes, Simpson, Thacher & Bartlett, New York City, for American Home Products Corporation.

Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Howard D. Scher, Stephen J. Levy, Montgomery, McCracken, Walker and Rhoads, Steven E. Bizar, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for ALCO Health Services Corporation.

William M. Hannay, Linda K. Stevens, Schiff, Hardin & Waite, Chicago, IL, Robert K. Stanley, James H. Ham, III, Baker & Daniels, Indianapolis, IN, for Eli Lilly & Company.

Paul C. Saunders, Douglas D. Broadwater, Stephen S. Madsen, Cravath, Swaine & Moore, Kevin J. Arquit, Richard A. Cirillo, Rogers & Wells, New York City, Eric D. Freed, Law Offices of Eric D. Freed, Los Angeles, CA, for Bristol–Meyers Squibb Company.

Larry J. Saylor, Catherine M. Patterson, Miller, Canfield, Paddock & Stone, Detroit, MI, Martin J. Dubowsky, Martin J. Dubowsky, Ltd., Chicago, IL, James G. Vantine, Jr., B. Jay Yelton, III, Charles E. Ritter, Attorney, Kalamazoo, MI, for Upjohn Company.

William F. Cavanaugh, Jr., Thomas W. Pippert, Roosevelt N. Nesmith, Patterson, Belknap, Webb & Tyler, New York City, for Johnson and Johnson Vision Products, Inc.

Michael M. Conway, Hopkins & Sutter, P.C., Scott M. Mendel, Michael Sennett, Matthew K. Phillips, Michael J. Abernathy, Stephen H. Wenc, Carolyn Suzanne Palk, Bell, Boyd & Lloyd, John W. Nields, Jr., Marguerite S. Boyd, Howrey & Simon, Jennifer A. Albert, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, Ellen Kornichuk Emery, Attorney at Law, Chicago, IL, for Purdue Frederick Company, a New York Corporation.

Peter J. Venaglia, Herschel Weinstein, Dornbush, Mensch, Mandelstam & Schaeffer, New York City, for Forest Lab Inc.

Michael Lee McCluggage, Eric P. Berlin, Wildman, Harrold, Allen & Dixon, Chicago, IL, Aldo A. Badini, Deirdre M. McDonald, White & Case, Michael J. Gallagher, Dewey Ballantine, Saul P. Morgenstern, Attorney, New York City, for Ciba–Geigy Corp.

Richard S. Goldstein, Shearman & Starting, New York City, Robert Harris Nathan, Sachnoff & Weaver, Ltd., Chicago, IL, for Merck & Co. Inc.

Fredric Adam Cohen, Suzanne Robinson, Rudnick & Wolfe, William M. McErlean, Seidler & McErlean, Chicago, IL, for Thrift Drug Inc.

Michael M. Conway, Hopkins & Sutter, P.C., Chicago, IL, John W. Nields, Jr., Howrey & Simon, Washington, DC, for Schering–Plough Corporation.

Richard Lewis Reinish, D'Ancona & Pflaum, Chicago, IL, Kenneth R. Logan, Joseph F. Tringali, Simpson, Thacher & Bartlett, New York City, for RX USA, Inc.

Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for National Wholesale Druggists' Association.

John L. Huff, Attorney at Law, Chicago, IL, Scott D. Livingston, Robert M. Barnes, Bernard D. Marcus, Marcus & Shapira, L.L.P., Pittsburgh, PA, for Giant Eagle Inc.

## MEMORANDUM OPINION AND ORDER

KOCORAS, District Judge.

This matter comes before the Court on the Individual Plaintiffs' motion for leave to amend, pursuant to Fed.R.Civ.P. 15(a), to join the Wholesalers as defendants in their Sherman Act conspiracy claims. Also before the Court is the Individual Plaintiffs' motion for coordinated and simultaneous pretrial orders. For the reasons set forth below, the Individual Plaintiffs' motion for leave to amend is granted, but their motion for simultaneous pretrial orders is denied.

## BACKGROUND

The factual background of this multi-district litigation has been extensively recited in the prior decisions of this Court, and thus it is unnecessary to recapitulate the entire story here. It is sufficient to say that a number of actions have been filed by various plaintiffs alleging, inter alia, a conspiracy among prescription brand name drug manufacturers to fix prices for such drugs and price discrimination through their use of a "two-tiered" pricing system. The Judicial Panel on Multidistrict Litigation has referred the cases arising from this pricing system to this Court for pre-trial proceedings.

The plaintiffs in this case have basically polarized into two identifiable groups. On behalf of a nation-wide class[1], the "Class Plaintiffs" allege a price-fixing conspiracy in which the defendants agreed to eliminate price competition and to keep prices of prescription brand name drugs artificially high to retail pharmacies in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The other group of plaintiffs consists of thousands of independent pharmacies, drug store chains, and grocery store chains who have chosen to opt out of the class and pursue their own individual claims. In addition to alleging Sherman Act conspiracy violations, these opt-out plaintiffs, known collectively as the "Individual Plaintiffs", assert price discrimination claims pursuant to the Robinson–Patman Act, 15 U.S.C. §§ 13(a), (d) and (f).

Though both the Class Plaintiffs and the Individual Plaintiffs originally named the Manufacturer Defendants as defendants in their Sherman Act claims, these plaintiff groups diverged in their treatment of the Wholesalers[2]. The Class Plaintiffs also

---

**1.** The plaintiff class is defined as follows:

All persons and entities in the United States who, at any time during the period from October 15, 1989, to the present, purchase or purchased prescription brand name drugs directly from any of the defendants. The class excludes defendants; other manufacturers of prescription brand name drugs; other wholesalers of prescription brand name drugs; co-conspirators of any of the foregoing entities; affiliates, parents, and subsidiaries of any of the foregoing entities; governmental entities; mail order pharmacies; health maintenance organizations; hospitals; clinics; and nursing homes.

**2.** "Wholesalers" refers to those wholesalers named in the Individual Plaintiffs' proposed amended complaint, specifically: Amerisource Corporation; Bergen Brunswig Corporation; Bindley Western Industries, Inc.; Cardinal Health, Inc.; McKesson Corporation; and Whitmire Distribution Corporation. These same Wholesalers are named as defendants in the Sherman Act claims for the Class case. The Class Plaintiffs also named FoxMeyer Drug Company as a Wholesaler Defendant; the Individual Plaintiffs do not seek to add FoxMeyer at this time because FoxMeyer has since filed for bankruptcy in August 1996.

named the Wholesalers as defendants in their Sherman Act claim; however, the Individual Plaintiffs, though identifying the Wholesalers as co-conspirators in their Section 1 claims, did not name them as defendants. Thus, though both plaintiff groups alleged a vertical conspiracy in the brand name drugs industry, only the Class Plaintiffs included the Wholesalers as named defendants.

This decision of whether to include the Wholesalers as named defendants, and the potential legal ramifications of this decision, has been disputed throughout the litigation. Near the outset of this litigation, the Manufacturer Defendants' moved for judgment on the pleadings seeking dismissal of the Individual Plaintiffs' claims on the ground that they failed to name the Wholesalers as defendants. The basis for this motion was the "indirect purchaser" rule, established by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), which prohibits indirect purchasers—those who are at least one-step removed on the distribution chain from the antitrust violator—from recovering "pass-on" damages under Section 1 of the Sherman Act. In response to this motion, the Individual Plaintiffs argued that the Seventh Circuit, in its opinion in *Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478 (1980), expressly found the *Illinois Brick* bar to recovery inapplicable in the situation where the intermediary (the entity between the indirect purchaser and the alleged antitrust violator), though not named as a defendant, is alleged to be a co-conspirator in a vertical conspiracy. *See Fontana*, 617 F.2d at 481 ("We are not satisfied that the *Illinois Brick* rule directly applies in circumstances where the manufacturer and the intermediary are both alleged to be co-conspirators in a common illegal enterprise resulting in intended injury to the buyer.") Thus, it was the Individual Plaintiffs' position that, despite their decision not to name the Wholesalers as defendants, *Illinois Brick* did not bar their indirect purchase claims against the Manufacturer Defendants.

In an opinion dated October 18, 1994, this Court agreed with the Individual Plaintiffs that *Fontana* dictated that "the 'co-conspira-

cy intermediary issue' was not within the realm of *Illinois Brick* and thus was no bar to the plaintiff's suit." *In re Brand Name Prescription Drugs Antitrust Litigation*, 867 F.Supp. 1338, 1345 (N.D.Ill.1994). Though acknowledging that other circuits required the inclusion of co-conspirator intermediaries as defendants in a Sherman Act case, *see, e.g. Link v. Mercedes–Benz of North America, Inc.*, 788 F.2d 918, 931 (3d Cir.1986); *In re Midwest Milk Monopolization Litigation*, 730 F.2d 528 (8th Cir.), *cert. denied* 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984), this Court found that the indirect purchase claims against the Manufacturer Defendants could proceed without the Wholesalers included as defendants in the conspiracy. The Court also maintained this position on the indirect purchaser issue when it was raised by the Manufacturer Defendants in subsequent motions. *See In re Brand Name Prescription Drugs Antitrust Litigation*, 878 F.Supp. 1078, 1082 (N.D.Ill.1995).

The recent decision by Seventh Circuit in this case, however, has cast new light on the importance of formally naming the Wholesalers as defendants in plaintiffs' Sherman Act claims. First, the Seventh Circuit explicitly rejected the notion that *Illinois Brick* is inapplicable to the conspiracy alleged in this case; overruling our analysis of this issue, the Court expressly held that the Plaintiffs' indirect purchaser claims against the Manufacturer Defendants were "just the kind of complaint that *Illinois Brick* bars." *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 606 (7th Cir.1997). Furthermore, the Seventh Circuit also cited with approval case law from other jurisdictions which required that alleged vertical co-conspirators be named as defendants in order to avoid an *Illinois Brick* bar to recovery. *Id.* at 605. Thus, it would seem that the Seventh Circuit now adheres to the legal position that, to qualify for the co-conspirator exception to *Illinois Brick*, intermediaries in an alleged vertical conspiracy must be formally joined as defendants and not merely named as co-conspirators.

In light of this direction by the Seventh Circuit, the Individual Plaintiffs now seek leave to amend their complaints to join the

Wholesalers as defendants in their Sherman Act claims. Both the Manufacturing Defendants and the Wholesalers oppose the motion, asserting various grounds as to why leave to amend should not be granted. The Individual Plaintiffs have also filed a motion for simultaneous and coordinated pretrial orders, a motion which the Manufacturer Defendants also oppose.

## DISCUSSION

### I. Motion for Leave to Amend

 The decision of whether to grant or deny the Individual Plaintiffs' motion for leave to amend the Wholesalers rests within the sound discretion of this Court. *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992). Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." However, because a responsive pleading has long since been filed in this case, leave to amend is not to be automatically granted. *Johnson v. Methodist Medical Ctr.*, 10 F.3d 1300, 1303 (7th Cir.1993), *cert. denied* 511 U.S. 1107, 114 S.Ct. 2102, 128 L.Ed.2d 664 (1994).

The Supreme Court has explained that leave to amend should be denied if there has been "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Johnson*, 10 F.3d at 1303. Both the Manufacturer Defendants and the Wholesalers have filed briefs in opposition to this motion, each asserting that many of these reasons exist to mandate that leave to amend be denied at this time. The Court will discuss the merits of each of these factors independently, and will then assess the overall balance of these factors in light of what justice requires in this case.

### A. Unexcused Undue Delay

 The Manufacturer Defendants and the Wholesalers (collectively the "Objectors") argue that the Individual Plaintiffs' undue delay in seeking leave to amend requires that their motion be denied. Citing the length of the delay, Objectors contend that the Plaintiffs face a stiff presumption against granting leave to amend at this stage of the case. *See Perrian*, 958 F.2d at 194 ("the longer the delay, the greater the presumption against granting leave to amend"). Furthermore, Objectors argue that the reason offered by the Plaintiffs in purported justification of this delay—specifically, that they thought it unnecessary to name the Wholesalers as defendants until the Seventh Circuit's recent opinion in this case—is legally insufficient. Essentially, Objectors contend that the Individual Plaintiffs made a tactical decision in not naming the Wholesalers as defendants and that they must now live with the consequences of that decision.

The Individual Plaintiffs respond by arguing that their delay in seeking leave to amend is justified by the changed legal circumstances surrounding this case. They contend that prior Seventh Circuit case law and this Court's rulings in this case previously supported their view that the Wholesalers need not be joined, and that only after the Seventh Circuit's recent opinion was their position on this issue called into question. Since they quickly sought leave to amend following the release of that opinion in late August, the Individual Plaintiffs submit that they have not unduly delayed in seeking to join the Wholesalers to their cases.

In support of their argument that the Individual Plaintiffs' delay in seeking amendment has been undue, Objectors cite to several cases with similar procedural maturity as the instant litigation in which leave to amend was denied. For example, the Seventh Circuit has found that "a plaintiff's leave to amend when filed after discovery has been closed and after a defendant's motion for summary judgment has been filed, is considered unduly delayed and prejudicial." *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995), *cert. denied* —— U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996). Objectors also note that motions to amend following delays much shorter than the four-year period in this case have been denied as belated. *See, e.g., Perrian*, 958 F.2d at 195 (where plaintiff

sought leave to amend sixteen months after filing of initial complaint and after close of discovery, Seventh Circuit held this delay was fatal to plaintiff's motion); *Profile Racing, Inc. v. Profile for Speed, Inc.*, 1995 WL 549108 at *1–2 (N.D.Ill. Sept. 11, 1995) (where plaintiff sought to add a defendant almost two years after original complaint and more than one year after it "had all the information . . . it claim[ed] implicat[ed]" the proposed defendant, leave to amend was denied because of this "lengthy and unexplained delay"). Thus, Objectors argue that the timing of this motion—four years after the initial complaint, two years after discovery has closed, with summary judgment already ruled on, and now on the eve of trial—dictates that it must be denied.

Of course, the Plaintiffs cannot deny that substantial water has passed under the bridge of this litigation. However, the Individual Plaintiffs contend that their delay in seeking to join the Wholesalers to their cases is excused by their reasonable reliance on case precedent which indicated that this was unnecessary. Plaintiffs assert that the Court of Appeals' recent decision in this case effectively modified this circuit's interpretation of the *Illinois Brick* rule, and that such a change in law provides an adequate ground to excuse any delay and allow leave to amend at this time. *See, e.g., Balgowan v. New Jersey, Dept. of Transportation*, 115 F.3d 214 (3d Cir.1997).

In deciding not to include the Wholesalers as defendants in their Sherman Act claims, the Individual Plaintiffs apparently relied upon the following two legal bases: (1) that the indirect purchaser rule of *Illinois Brick* was wholly inapplicable to this case because the manufacturers granted discounts directly to favored purchasers and withheld them directly from plaintiffs, and (2) even if *Illinois Brick* did apply, the law of the Seventh Circuit—specifically *Fontana Aviation, Inc. v. Cessna Co.*, 617 F.2d 478 (7th Cir.1980)—held that an antitrust plaintiff need not name a co-conspirator middleman as a defendant, but need only prove that he was in fact a co-conspirator. This Court, through our previous rulings, confirmed the Individual Plaintiffs' reliance on these legal positions. With

respect to the first basis, we agreed that, given the prominence of the Manufacturers Defendants in the alleged conspiracy, the indirect purchaser rule did not bar the claims against the Manufacturer Defendants even if, in form, the purchases were made through an intermediary. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation*, 1996 WL 267752 at *3 (N.D.Ill. May 17, 1996). This Court also agreed with Plaintiffs that *Fontana* supported their assertion that the Wholesalers need not be named as defendants in order to recover from the Manufacturer Defendants in the alleged vertical conspiracy.

The Court of Appeals' recent opinion, however, seriously undermines any continued reliance on these legal interpretations. It is clear that both the Individual Plaintiffs and this Court were incorrect as to the inapplicability of *Illinois Brick*, as Judge Posner explained that the Sherman Act claims against the Manufacturer Defendants were "just the kind of complaint that *Illinois Brick* bars." *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 606 (7th Cir. 1997). In addition, the Seventh Circuit's analysis of the *Illinois Brick* co-conspirator exception, and specifically their approving citation of *Beef Industry* and its requirement that direct sellers be named as defendants, casts serious doubt on the Individual Plaintiffs' second legal basis. *Id.* at 605. The Individual Plaintiffs thus contend that the Seventh Circuit's decision has changed the law governing this issue, and that this change is the reason why they seek leave to amend at this time (and is why they did not do so earlier).

Objectors argue that the Seventh Circuit's decision changed nothing, but rather merely confirmed what was already the law under *Illinois Brick* and its progeny. Claiming that the Plaintiffs could not have been surprised by the Seventh Circuit's stance on this issue, Objectors list the numerous decisions of other courts of appeal which had previously held that alleged vertical co-conspirators must be named as defendants to avoid an *Illinois Brick* bar. *See, e.g., Austin v. Blue Cross & Blue Shield of Alabama*, 903 F.2d 1385, 1392 (11th Cir.1990); *Link v. Mer-*

*cedes–Benz of North America, Inc.,* 788 F.2d 918, 931 (3d Cir.1986); *In re Midwest Milk Monopolization Litigation,* 730 F.2d 528, 532 (8th Cir.1984); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 691 F.2d 1335, 1342 (9th Cir.1982), *cert. denied* 464 U.S. 1068, 104 S.Ct. 972, 79 L.Ed.2d 211 (1984); *In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1163 (5th Cir.1979). Furthermore, Objectors argue that *Fontana's* conclusion that *Illinois Brick* did not apply in that case, where alleged vertical co-conspirators were not named as defendants, was in fact supported by a separate and independent ground—that the plaintiff was a competitor and not just an indirect customer. Thus, Objectors argue that the Individual Plaintiffs could not have reasonably relied on *Fontana* in deciding not to name the Wholesalers as defendants in their Sherman Act claims, and that their delay in seeking to join them is therefore unexcused and must be denied.

With respect to the case law indicating that similar delays have been grounds for denying leave to amend, the Court must remind all involved that this type of discretionary decision is heavily dependent on the facts and circumstances of a particular case. As we all realize, this is not a typical case, and the considerations attendant to this massive antitrust litigation are not the same as with a run-of-the-mill case. *Cf. Sanders,* 56 F.3d 771 (three plaintiffs alleging Title VII claim against former employer); *Perrian,* 958 F.2d 192 (inmate's suit against prison officials for medical neglect). In addition, this Court is unprepared to label the Individual Plaintiffs' interpretation of the *Illinois Brick* rule as unreasonable when we subscribed to that same interpretation in our previous rulings in this case. Thus, the Court finds that the delay in this case, by itself, does not convince us that the Individual Plaintiffs' amendment should be denied. Plaintiffs had a good-faith and intellectually reasonable basis for not seeking to join the Wholesalers at an earlier stage, and we cannot say that this delay should now cripple their Sherman Act claims in this case.

Finally, Objectors point out that the only two courts to have considered motions seeking leave to amend so as to avoid an *Illinois Brick* bar have denied them as untimely. In *Beef Industry,* the Fifth Circuit found that the district court did not abuse its discretion in denying leave to amend made "five months after the defendants moved for dismissal on the basis of *Illinois Brick." Beef Industry,* 600 F.2d at 1162. The *Beef Industry* decision was grounded in concern that "[m]uch of the value of summary judgment procedure ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should the theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Id.* (citation omitted). Similarly, the Eighth Circuit in *Midwest Milk* affirmed the denial of a motion to join wholesaler intermediaries made "several years after the *Illinois Brick* case had been decided." *Midwest Milk,* 730 F.2d at 532–33. Given the similarity between the Individual Plaintiffs' request for leave to amend and the amendments sought in *Beef Industry* and *Midwest Milk,* Objectors thus argue that the rationale of these cases similarly dictate the result we must reach in this case.

Plaintiffs contend that the circumstances surrounding the decisions in *Beef Industry* and *Midwest Milk* are readily distinguishable from the instant situation. With regard to *Beef Industry,* Plaintiffs note that the plaintiffs in that case waited five months after the defendants moved to dismiss following the decision in *Illinois Brick,* and until after they lost that motion, before seeking leave to amend. *Beef Industry,* 600 F.2d at 1162. Likewise, the *Midwest Milk* plaintiffs waited several years after the *Illinois Brick* decision before seeking to allege a vertical conspiracy to avoid the indirect purchaser bar. *Midwest Milk,* 730 F.2d at 533. In addition, in both of these cases, the plaintiffs never did formally file a motion seeking to add the intermediary in the alleged vertical conspiracy. Plaintiffs argue, therefore, that the unexcused delays in the cited cases are starkly contrasted by the Plaintiffs' conduct in this case, where leave to amend was sought by motion promptly following the Seventh Circuit's opinion on this issue.

The Court agrees with Plaintiffs that *Beef Industry* and *Midwest Milk* presented situations significantly different than what we have here. Beyond any disagreement over the interpretation of prior precedent, those plaintiffs were guilty of neglect and delay when faced with dispositive motions concerning the *Illinois Brick* issue. The same cannot be said of the Individual Plaintiffs in this case. The Individual Plaintiffs relied, and reasonably so this Court found in our previous rulings, that the Seventh Circuit's decision in *Fontana* portended that inclusion of the Wholesalers as defendants was unnecessary to proceed against the Manufacturer Defendants on the indirect purchase claims. The plaintiffs in *Beef Industry* and *Midwest Milk* did not have similar case precedent on which to rely. Furthermore, even if *Beef Industry* and *Midwest Milk* are not distinguishable, these courts merely affirmed that denial of leave to amend in this instance would not be an abuse of discretion, not that such a result was necessarily mandated.

## B. Undue Prejudice

■ Objectors next contend that they will suffer undue prejudice if the Individual Plaintiffs are granted leave to amend the Wholesalers at this time. The Wholesalers point out that, since they were not parties in the Individual Plaintiffs' cases, they have not participated in the past four years of discovery and pre-trial activity with respect to these cases. In addition, Objectors contend that because the Individual Plaintiffs seek to add only six Wholesalers as defendants, significant discovery will have to be undertaken to determine if and to what extent each Individual Plaintiff made purchases through one of these named Wholesalers (since other indirect purchase claims would, they claim, be barred under *Illinois Brick*). Finally, Objectors contend that the prejudice resulting from this eleventh-hour amendment is significantly exacerbated by the need of the defendants to prepare for the impending trial of the Class case.

The Court must admit it is skeptical about the seriousness of the Wholesalers' concerns about the additional discovery they would require if joined in the Individual Plaintiffs' cases. In the Court's view, the Wholesalers' relative inactivity in discovery for the Class case, to which they have always been a party, would seem to indicate that only limited additional discovery would be needed for them to get up to speed in the Individual cases. As pointed out by the Individual Plaintiffs, amidst all discovery that has been taken in the Class case, the Wholesalers served only two interrogatories and one set of request for admissions. Furthermore, the Wholesalers only found it necessary to attend 8 of over more than 1000 fact depositions, asking questions at only 2 of these depositions. One likely explanation for this minimal participation is that the Wholesalers apparently have a judgment-sharing agreement with the Manufacturer Defendants which indemnifies them for their counsel fees and their liability. Regardless, it seems a bit disingenuous for the Wholesalers to claim that they would need large amounts of discovery for the Individual Plaintiffs' cases when they did not find such discovery similarly necessary in the Class case.

The Court also detects some disingenuousness in the Objectors' contentions that the Individual cases are somehow markedly different than the Class case. Once again, the Individual Plaintiffs dutifully point out that the Objectors have previously taken a polar-opposite position on this issue when it was in their best interest to do so. For example, when moving to consolidate the Individual and Class Plaintiffs' Sherman Act claims for trial, the Manufacturer Defendants asserted that the claims were "virtually identical" and involved "the same facts—with the same evidence and witnesses." More to the point, the Manufacturer Defendants have also previously stated that "no plaintiff's Section 1 claim has required discovery that is meaningfully different from that of any other Section 1 claim. . . ." Thus, though the Court agrees that some additional discovery may be needed, Objectors' assertions as to the serious prejudice which would result from this discovery are overstated and unwarranted.

The Court also does not share the Objectors' worries about the fact that only six of the many wholesalers are sought to be added as defendants in the Individual Plaintiffs'

cases. Of course, these are the same Wholesalers which are currently defendants in the Class case, so these Wholesalers certainly cannot claim surprise that their joinder is now sought. As we have explained, any discovery that will be needed to determine which Individual Plaintiffs purchased from the named Wholesalers, and which did not, will be permitted. Thus, though amendment of the Wholesalers may complicate matters somewhat, it does not unduly prejudice any of the defendants in these cases.

The Court is sensitive to the potential prejudice which could result from adding the Wholesalers to the Individual cases, and requiring them to move ahead with these cases, while they are simultaneously preparing for the Class case. But, once again, it is hard to find that the Wholesalers will be unduly prejudiced where they have been in this litigation from the start and they have not found it necessary to be more than passive participants in the Class case discovery. The Court will continue to consider the hardship and imposition on the defendants in concurrently (yet on different schedules) bringing these cases to trial, but this issue is not prejudicial enough so as to persuade us to deny the Individual Plaintiffs' motion for leave to amend.

In summary, though Objectors will suffer some prejudice by amendment of the Wholesalers at this late stage, the Court is not convinced that they will be unduly prejudiced if leave to amend is granted. The Wholesalers have been present in this litigation from the outset, and have had the opportunity to actively participate in the defense of the Sherman Act claims for the Class case. *Cf. Profile Racing,* 1995 WL 549108 at *1–2 (denying plaintiff leave to amend to assert claims against defendant's chief executive officer where "even though [he] may have been sitting on the sidelines during this litigation, it prejudices him greatly that he has not been in the game"). Thus, any hardship to the Wholesalers in granting leave to amend is assuaged by their close familiarity with and participation in the overall MDL proceedings, and thus they will not be unduly prejudiced by their inclusion in the Individual cases as well.

### C. Proposed Amendment is Futile

The Wholesalers finally argue that leave to amend should be denied because it would be futile. In support of this argument, the Wholesalers claim that, since the statute of limitations period is four years and the Individual Plaintiffs cannot have this amendment "relate back" to the original filing date, the pre–1993 claims of vertical conspiracy are time-barred and thus the amendment is futile. Plaintiffs respond that this "relation back" question is improperly cast as an argument for finding futility, and that nonetheless the claims should relate back to the original filing date.

■ The Court agrees that the relation back question is irrelevant to whether granting leave to amend would be futile or not. An amendment is "futile" if it (1) merely restates a previously determined claim, (2) fails to state a valid theory of liability, or (3) cannot withstand a motion to dismiss. *See Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir.1992) (citations omitted). None of these bases for asserting futility would seem to apply. In fact, the Seventh Circuit's recent conclusion on this issue—that there is sufficient evidence to enable a reasonable jury to find that the Wholesalers conspired with the Manufacturer Defendants in violation of the Sherman Act—plainly demonstrates that the amendment would not be futile. Thus, the Individual Plaintiffs' motion cannot be denied on the grounds that it is futile.

However, the issues of whether the proposed amendment of the Wholesalers would relate back, and whether relation back would even be necessary to avoid an *Illinois Brick* problem for the pre–1993 indirect purchase claims, are certainly important to the case and will need to be eventually resolved. Though they are not dispositive of the Individual Plaintiffs' claims *in a general sense,* and thus do not render the proposed amendment futile, they could preclude certain plaintiffs from recovery and could definitely have some effect on whether damages will be recoverable for liability resulting from pre–1993 activity. The Court declines to consider these issues, however, until the parties can

be given a more thorough opportunity to advocate the merit of their positions.

### D. Balance of Considerations

■ In the end, the ruling on this motion is dictated by the text of Rule 15(a) itself. In the Court's opinion, "justice so requires" that the Individual Plaintiffs be granted leave to amend to add the Wholesalers as defendants in their Sherman Act claims. The prudent course at this stage is to put this *Illinois Brick* issue to rest, for it threatens to haunt the finality of any resolution of this case if not settled. Now that the Seventh Circuit has affirmed that triable issues exist for the Sherman Act claims, these issues should be decided on their merits and not on some technical deficiency. Thus, though the Court understands the concerns of the Manufacturer Defendants and the Wholesalers, leave to amend must be granted for justice truly to be served in this case.

The Court is mindful of the ramifications that this decision may have with regard to the future course of both the Individual Plaintiffs' and the Class cases. The Court is amenable to any reasonable request the Wholesalers may have to conduct some limited discovery for the Individual Plaintiffs' cases. However, given the limited role that the Wholesalers have played in the Class case discovery, it would not seem that massive amounts of new discovery will be necessary. Therefore, the Court grants the motion for leave to amend with the understanding that the Wholesalers will be given the opportunity to conduct appropriate discovery in each of the Individual cases.

### II. Motion for Coordinated and Simultaneous Pretrial Orders

■ In a separate motion, the Individual Plaintiffs move the Court to require simultaneous and coordinated Local Rule 5.00 Pretrial Orders in all the Sherman Act cases. The Individual Plaintiffs provide three reasons for this request. First, they contend that, because there is a reasonable probability that the Class case will settle, it is prudent to have the Individual cases ready to be tried on the same schedule as is currently anticipated for the Class case. Second, the Individual Plaintiffs wish to take advantage of any economies that can be gained by simultaneous preparation of parallel pretrial orders. Finally, the Plaintiffs argue that requiring simultaneous pretrial orders will ensure that the Court deal with similar issues amongst the cases at the same time. In essence, the Individual Plaintiffs would like to see that their cases be readied for trial and not languish awaiting completion of the Class case.

The Court agrees with the Individual Plaintiffs that the preparation of all of the cases for trial should be economized to as much an extent as is possible. That is the reason for the MDL statute, and that is why all of these cases are currently before this Court. However, the Court must also consider whether achieving such economies may have a prejudicial effect on the parties to this litigation. In light of our decision to grant the Individual Plaintiffs leave to join the Wholesalers in their cases, the Court believes that we cannot now require that simultaneous pretrial orders be prepared for the Individual cases. The Wholesalers are entitled to seek some discovery in the cases to which they have been newly joined; meanwhile, the Class case is proceeding full speed ahead toward trial next year. To require simultaneous pretrial orders at this stage would either derail and delay the progress of the Class case or impose an undue burden on the Wholesalers to assemble their defenses to the Individual cases.

Though preparation of the Class and Individual cases should be economized as much as is feasible, the Court will not require the defendants in the Individual cases to jump on the same fast track that the Class case is currently on. The Court expects that the parties to the Individual cases will need to conduct some additional discovery because of the joinder of the Wholesalers, and after that discovery is completed the Court will consider the appropriate timetable for submission of pretrial orders in these cases. As to the present request, the Court denies the Individual Plaintiffs' motion for simultaneous pretrial orders.

### CONCLUSION

For the reasons set forth above, the Individual Plaintiffs' motion for leave to amend

their complaint to add the Wholesalers as defendants in the Sherman Act claims is granted, while the Individual Plaintiffs' motion for coordinated and simultaneous pretrial orders is denied.